In re Robert W. GRAZIANO, Debtor.

**GREAT AMERICAN INSURANCE CO., Plaintiff,**

v.

**Robert W. GRAZIANO, Defendant.**

**Bankruptcy No. 883–30033–18.
Adv. No. 883–0245–18.**

United States Bankruptcy Court,
E.D. New York.

Dec. 6, 1983.

Martini & Wynne, Lake Success, N.Y., for Great American.

Long, Tuminello, Besso, Seligman & Quinlan, Bay Shore, N.Y., for debtor/defendant.

## DECISION

C. ALBERT PARENTE, Bankruptcy Judge.

This action is brought by creditor, Great American Insurance Co. ("Great American") seeking a determination that a debt owed to it by Robert W. Graziano ("debtor") is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) which excepts from discharge debts accruing from *inter alia* larceny and embezzlement.

### FACTUAL CONTEXT

From 1978 until 1980, debtor was employed as a salesman for H. Schnell & Company ("Schnell"), a fruit wholesaler located at the Hunt's Point Market, Bronx, New

York. Debtor was responsible for the over-the-counter sale of produce to a regular clientele and for the collection of cash proceeds and extension of credit with respect to such transactions. During a twenty-four hour period, debtor would handle anywhere from ten to fifty thousand dollars in cash.

Debtor admits that at a point in time, which he places at the end of May or beginning of June, 1980, he was involved in a conversation with the president of a trade association of Korean retailers wherein it was requested that a better price be given to its members than that ordinarily charged. In the absence of such a concession, the association would seek an alternative source for the produce.

In response to this demand, debtor entered into a course of discounting prices to the association members without notice to his employer. In fact, the sales "tickets" he remitted to his employer indicated that the sales had been consummated at the authorized price level. Debtor posits as the underlying motive for the implementation of this practice his intention to increase the sales volume of Schnell.

At a point during the summer of 1980, Seymour Schnell, president of Schnell, directed that an investigation be conducted into the sales activities of debtor. To this end, the accounting firm of Touche Ross & Co. was retained to perform an independent audit and Richard Avidon, assistant to the president of Schnell, was assigned to oversee and assist in the accounting.

The audit disclosed that debtor's sales accounts showed a deficit of approximately $775,000. On the basis of the audit, Mr. Avidon filed a complaint with the Bronx County District Attorney. Debtor was indicted by the Bronx County Grand Jury on September 29, 1980 and charged with the crime of grand larceny in the second degree. At debtor's arraignment on April 29, 1981, he pleaded guilty as charged. On June 4, 1981, Supreme Court Judge Shackman sentenced debtor to pay a fine of $5,000.

On September 19, 1980, Schnell filed a proof of loss with Great American Insurance Co. ("Great American") which had issued a fidelity bond to Schnell covering inter alia employees' fraudulent or dishonest acts. Great American reimbursed Schnell in the amount of $50,000 which constituted the maximum allowable under the terms of the bond. By virtue of its payment of Schnell's claim, Great American asserts that it is subrogated to the rights of Schnell to the extent of amounts paid out on the claim, and is entitled to reimbursement in the amount of $9,224.42 for expenses incurred in investigating and auditing the claim.

On January 7, 1983, debtor filed a petition under Chapter 7 of the Bankruptcy Reform Act of 1978 ("Code"). On April 6, 1983, Great American commenced this adversary proceeding by filing its complaint with the clerk of this court. It should be noted however that Great American has not filed a proof of claim. The debtor interposed his answer on May 17, 1983. A trial was conducted on September 15, 1983 and continued on September 22, 1983. Decision was reserved.

## CREDITOR'S FAILURE TO FILE A PROOF OF CLAIM DOES NOT ACT AS A BAR TO THIS ACTION

As a preliminary matter, a creditor's failure to file a proof of claim does not act as a bar to an action to determine dischargeability although it will preclude a recovery against debtor's bankruptcy estate in the event no claim is filed on creditor's behalf. See B. WEINTRAUB & A. RESNICK, BANKRUPTCY LAW MANUAL, ¶ 5.04 (1980). The legislative history to the Code addresses this issue in its discussion of the basis for allowing the trustee or debtor to file a proof of claim on behalf of the creditor in liquidation cases.

> the trustee or debtor may file a proof of claim if the creditor does not timely file. The purpose of this subsection [501(c)] is mainly to protect the debtor if the creditor's claim is nondischargeable. If the creditor does not file, there would be no distribution on the claim, and the debtor would have a greater debt to repay after

the case is closed than if the claim were paid in part or in full in the case .... H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 351 (1977), reprinted in Appendix 2 Collier on Bankruptcy (15th ed. 1983); *see* S.Rep. No. 95–989, 95th Cong., 2d Sess. 61 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 5847 reprinted in Appendix 3 Collier on Bankruptcy (15th ed. 1983).

Thus, the legislature clearly intended that an adversary proceeding could be brought by a creditor to determine nondischargeability notwithstanding such creditor's failure to file a proof of claim.

Such legislative intent may be corroborated by reference to the definitional sections of the Code and applicable Bankruptcy Rules.

■ Rule 409(a)(1) which governs this proceeding states that "[a] bankrupt or any creditor may file a complaint with the court to obtain a determination of the dischargeability of any debt." Section 101(9) of the Code defines "creditor" in pertinent part as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." Claim is defined in § 101(4) as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Therefore, so long as an entity has a claim against the debtor, as distinguished from a claim against the debtor's estate, that entity may commence a proceeding to determine the dischargeability of a debt (*see* 11 U.S.C. § 502).

SECTION 523(a)(4)

■ Great American proceeds under 11 U.S.C. § 523(a)(4) on the theory that its claim against debtor, alleged to be in the amount of $59,224.42, is nondischargeable in bankruptcy in that it arose as the consequence of debtor's embezzlement or larceny of funds from his employer, Schnell. Great American must carry the burden of proving that its debt comes within Section 523(a)(4) of the Code. *In re Cross,* 666 F.2d 873 (5th Cir.1982); *In re Ayers,* 25 B.R. 762 (Bkrtcy. M.D.Tenn.1982); *In re Thurston,* 18 B.R. 545 (Bkrtcy.M.D.Ga.1982). The § 523(a) exceptions are to be strictly construed in favor of the debtor. *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *In re Thurston, supra.* Claims that debts are nondischargeable under subsection 523(a)(4) should be examined with special care. *In re Fasulo,* 25 B.R. 583 (D.Conn. 1982).

■ In addition, "where dishonesty or fraud, is at issue, the courts have typically required a higher standard of proof." *In re Magnusson,* 14 B.R. 662, 667, 8 B.C.D. 708, 711 (Bkrtcy.N.D.N.Y.1981) *quoting In re Huff,* 1 B.R. 354, 357, 1 C.B.C.2d 171, 173 (Bkrtcy.D.Utah 1979). Thus, where plaintiff seeks to show that debtor was guilty of embezzlement or larceny it must prove each of the elements of its cause of action by clear and convincing evidence. *In re Storms,* 28 B.R. 761 (Bkrtcy.E.D.N.C.1983); *In re DeRosa,* 20 B.R. 307 (Bkrtcy.S.D.N.Y. 1982); *In re Crook,* 13 B.R. 794, 4 C.B.C.2d 1451 (Bkrtcy.D.Me.1981).

Section 523(a)(4) provides:

A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—... (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

■ Section 523(a)(4) constitutes a significant revision of its predecessor section 17(a)(4) under the "Bankruptcy Statute of 1898" ("Act") in two respects. First, it includes larceny as an independent basis to preclude the discharge of a debt. *See* H.R. Rep. No. 95–595, 95th Cong., 1st Sess. at 364, *reprinted in* Appendix 2 *Collier on Bankruptcy* (15th ed. 1983). Second, the

phrase "while acting in a fiduciary capacity" does not qualify the word embezzlement, or the new category larceny, and thus the coverage of § 523(a)(4) is broadened in its application to nonfiduciaries. 3 *Collier on Bankruptcy,* ¶ 523.14[1][c] at 523–98 (15th ed. 1983); *In re Carlton,* 26 B.R. 202 (Bkrtcy.M.D.Tenn.1982); *In re Crook, supra.*

■ The definitions of the terms larceny and embezzlement in § 523(a)(4) are to be determined under federal common law. *Id.; In re Storms, supra.* Embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Carlton, supra, citing Moore v. United States,* 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895); 3 *Collier on Bankruptcy* ¶ 523.14[3] at 523–107 (15th ed. 1983). Larceny is defined as the fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to the taker's use without the consent of the owner. *Id.* Larceny does not differ from embezzlement except with respect to the manner in which the funds or property come into the possession of a party. *In re Thurston, supra; In re Williams,* 2 C.B.C.2d 796, 7 B.C.D. 45 (Bkrtcy.W.D.Va.1980).

■ In applying the preceding precepts to the facts of this case, the court finds that the funds at issue "lawfully came into debtor's hands," and thus concludes that debtor did not commit a larceny for purposes of § 523(a)(4). Such conclusion obtains notwithstanding that debtor pleaded guilty to second degree larceny within the context of a state criminal prosecution. The apparent inconsistency between state and federal law is readily explained by reference to § 155.-05 2(a) of the New York Penal Law which subsumes under the general definition of larceny the specific common law offenses of *inter alia* "larceny by trespassory taking" and "embezzlement."

## APPLICATION OF RES JUDICATA AND COLLATERAL ESTOPPEL

Great American urges upon this court that the doctrines of *res judicata* and collat-

eral estoppel operate to preclude debtor from offering extrinsic evidence beyond the criminal conviction to demonstrate that his debt should be determined dischargeable. Great American has offered no authority however in support of its position.

■ The court finds that while debtor's plea of guilty to second degree larceny and the judgment entered thereon may be considered as evidence in evaluating whether the underlying debt incurred should be excepted from discharge, 46 AM.JUR.2D, *Judgments* § 619 (1969), such plea should not estop the debtor from introducing additional evidence on the ultimate issue of embezzlement or on any of the factual issues upon which embezzlement need be proven. *In re Bonhomme,* 8 B.R. 645 (Bkrtcy.W.D.Okl.1981); *In re Lilley,* 8 B.R. 561, 562 (Bkrtcy.E.D.Pa.1981); *In re Polivnick,* 8 B.R. 621 (C.D.Cal.1981).

This court has held in *In re Greenblatt,* 8 B.R. 994 (Bkrtcy.E.D.N.Y.1981), relying upon *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), that the doctrine of *res judicata* was inapplicable to a bankruptcy proceeding to determine the dischargeability of a debt. *See In re Dohm,* 19 B.R. 134, 6 C.B.C.2d 577 (W.D.Ill.1982); *In re Spector,* 22 B.R. 226 (Bkrtcy.N.D.N.Y. 1982); *In re King,* 7 B.R. 835, 7 B.C.D. 41 (Bkrtcy.N.D.Ga.1980).

Moreover, this court has held, in reliance upon the decision of Judge Learned Hand in *Lyons v. Westinghouse Electric Corp.,* 222 F.2d 184 (2d Cir.1955), *cert. denied,* 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955), that the judgment obtained in a prior state court proceeding may not be given collateral estoppel effect in a subsequent dischargeability hearing. The doctrine of collateral estoppel may only properly be applied to the facts underlying the judgment, and then, only upon the requisite showing. *In re Sloan,* 18 B.R. 1021 (Bkrtcy.E.D.N.Y. 1982).

■ Four criteria must be met before collateral estoppel effect may be given to factual issues underlying a prior action:

(1) the issue sought to be precluded must be the same as that involved in the prior action;

(2) that issue must have been actually litigated;

(3) it must have been determined by a valid and final judgment; and

(4) the determination must have been essential to the prior judgment.

*Id.* at 1023 quoting *In re McMillan,* 579 F.2d 289, 291–292 (3d Cir.1978).

 In consideration of the fact that debtor's plea to second degree larceny occurred at arraignment, and obviously prior to the presentation of the state's case, this court finds that the factual issues underlying debtor's plea were never litigated. Thus, criteria number "(2)" has not been met and collateral estoppel may not be utilized by Great American to preclude introduction of evidence by the debtor with respect to issues implicated by the plea of guilty.[1] *See Thompson v. Galaxy Enterprises, Inc.,* 414 F.Supp. 198 (S.D.N.Y.1976); *see also U.S. v. Podell,* 572 F.2d 31 (2d Cir.1978) (guilty plea after presentation of government's case does create a collateral estoppel); *Estate of Bach,* 81 Misc.2d 479, 365 N.Y.S.2d 454 (Surrogate's Ct. Dutchess Co. 1975).

Hence, the court will look to the evidence submitted in the instant matter to reach an independent determination as to whether an embezzlement has occurred rendering the consequent debt incurred nondischargeable.

## ANALYSIS OF EVIDENCE

 To prove embezzlement, Great American must demonstrate that (a) debtor has appropriated funds for his own benefit, *In re Walker,* 7 B.R. 563, 7 B.C.D. 68 (Bkrtcy.M.D.Ga.1980); *In re Thurston, supra,* and (b) has done so with fraudulent intent or by deceit, *In re Walker, supra; In re Crook, supra.* Significantly, there is no requirement to prove the amount of creditor's claim. It is the function of a bank-

ruptcy court in dischargeability cases to determine only the character of the debt. *See In re Cooney,* 8 B.R. 96 (Bkrtcy.W.D.Ky. 1980); *In re Keenan,* 3 B.C.D. 697 (Bkrtcy. N.D.Ga.1977).

Based upon the foregoing, the court returns to the evidence presented in the matter *sub judice.* Debtor admits that he had engaged in a protracted course of discounting prices to certain customers, Tr. of 9/22/83 at 12, on the ostensible theory that such course was beneficial to his employer. *Id.* at 22. Yet, debtor readily admits that all paperwork he submitted and all oral representations he made to his employer with respect to these discounted transactions reflected that he had consummated the transactions at the standard non-discounted price. *Id.* at 13. Debtor further admits that he received no additional compensation as the consequence of his increased sales volume. *Id.* at 20–21.

Debtor conceded, in addition, that he may have stated at a point in time that he would attempt to retrieve the amounts outstanding in a vault and would bring it to "somebody's home." *Id.* at 19. When asked why he made such a statement debtor responded that "it was a bluff, because I was so distraught. I did not know what to do at the time." *Id.* When further pressed by counsel, debtor explained, "I'm saying the money was the Koreans' money ... No, they didn't give it to me. They were going to give it back to H. Schnell." *Id.* at 20.

Viewed in its totality, debtor's testimony strains the credulity of this court. Stripped to the essentials, debtor without authority reduced the price of produce, and systematically misrepresented his financial dealings to his employer for the alleged purpose of providing a benefit to such employer. The court finds such professed altruism untenable. In addition, debtor contends that he, in a moment of stress, offered back a sum of money approximating between $190,000 and $200,000 to his employer which alleged-

---

1. This determination is butressed by the analogous line of cases which holds that a default judgment does not create a collateral estoppel as to the factual issues underlying such judg-

ment. *In re McMillan, supra; In re Grainger,* 20 B.R. 7 (Bkrtcy.D.S.C.1981); *Franks v. Thomason,* 4 B.R. 814 (N.D.Ga.1980).

ly represented funds of the individual Korean businessmen who received discounted prices and who would agree to repay such sums. Debtor fails to explain why these businessmen would make such payment in light of the fact that they had done nothing more than receive goods in consideration for their payment of a negotiated price. Debtor wishes to disavow his offer to return his employer's funds. However, this admission by the debtor clarifies debtor's course of conduct far more than any of debtor's inconsistent assertions.

This court finds that debtor intentionally misappropriated funds from his employer. Both the intent and actual taking necessary to prove embezzlement may be proved by circumstantial evidence. *U.S. v. Walker*, 677 F.2d 1014 (4th Cir.1982); *United States v. Powell*, 413 F.2d 1037 (4th Cir.1969).

In support of the aforestated conclusion, the court finds the following as fact:

a) Substantial losses were incurred by debtor's employer which were traceable to debtor's sales.

b) Debtor intentionally misrepresented to his employer the amounts at which his sales were consummated.

c) The employer's deficit resulted at least in part from debtor's misappropriation of such funds.

d) Subsequently, debtor agreed to return certain sums to his employer.

e) Debtor pleaded guilty to second degree larceny with respect to these transactions.

Accordingly, the court finds that the debt owed to Great American is nondischargeable under 11 U.S.C. § 523(a)(4).

Settle Judgment in accordance herewith.