In re Larry D. FAGAN, Debtor.

The OHIO CASUALTY INSURANCE COMPANY, Plaintiff,

v.

Larry D. FAGAN, Defendant.

In re Larry D. FAGAN, Debtor.

FIRST HERITAGE NATIONAL BANK, Plaintiff,

v.

Larry D. FAGAN, Defendant.

No. 90–02708–C.

Adv. No. 90–0363–C, 90–0366–C.

United States Bankruptcy Court, N.D. Oklahoma.

June 13, 1991.

Daniel L. Durocher, Oklahoma City, Okl., for Ohio Cas. Ins. Co.

Scott P. Kirtley, Tulsa, Okl., for First Heritage Nat. Bank.

James P. Tanner, Claremore, Okl., for defendant.

## MEMORANDUM OPINION

STEPHEN J. COVEY, Bankruptcy Judge.

This matter comes on to be heard upon the objections to the dischargeability of debts due and owing First Heritage National Bank ("Bank") and The Ohio Casualty Insurance Company ("Ohio") by Larry D. Fagan ("Debtor").

## STATEMENT OF FACT

Debtor began his employment for Bank in July of 1986. Prior to that time he was employed by an affiliated bank. He was the Executive Vice President and second in command. His duties were to make loans, solicit business, supervise employees, approve customer checks and generally manage the day-to-day business of Bank.

The Debtor, commencing in 1985 before he was employed by Bank and continuing until December 1988, borrowed money from the Bank on many occasions. These loans are evidenced by six notes. Each of these loans has a separate history and will be discussed individually below. All of the loans were originally approved by the Board of Directors of Bank or by the President of the Bank. The additional advances discussed below were made at the request of the Debtor and obtained without Board or a superior officer's approval.

Some of the notes evidencing the loans provide for a "line of credit" and others are "single pay notes". A "line of credit" note means a borrower can take advances up to the maximum amount of the note, pay the note down to a lower balance, and then obtain additional advances up to the maximum amount. This can continue until the note matures or expires by its own terms. A "single pay note" means the entire loan is due on a given date and once the maximum amount of the loan is reached, it cannot be paid down and then additional advances made up to the maximum amount. In short, a "line of credit" can go up and down, but a "single pay note" cannot.

Ohio issued a fidelity bond insuring the Bank against improper acts of its employees including the Debtor. Pursuant to this bond, Ohio has paid the Bank the sum of $26,989.39 and has a claim against the Debtor in this amount. The balance owing on these loans is due the Bank.

Debtor filed a Petition for Relief Under Chapter 7 of the Bankruptcy Code on the 14th day of September, 1990. On the 17th day of December, 1990, Ohio filed a Complaint asking that its debt against the Debtor be held nondischargeable. On the 18th day of December, 1990, Bank filed a Complaint against the Debtor asking that its debt be held nondischargeable. These actions were later consolidated for trial, because they arose out of the same facts and circumstances and, therefore, had common questions of law and fact. The Plaintiffs allege their debts are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(4). These provisions generally except from a discharge, debts incurred by false pretenses, false representations, actual fraud, embezzlement or larceny.

*Loan Number 1.* On April 5, 1985, the Debtor, while working for an affiliated bank, executed a note payable to the Bank in the amount of $10,000.00, due and payable one year later, on April 5, 1986. This note, even though it contained the language "single payment note" also contained the language "line of credit" and the parties all agreed this created a $10,000.00 "line of credit".

There were four deferrals or extensions of the due date entered into by the Debtor and officers of the Bank. The first deferral was entered into April 7, 1986, and extended the due date of the note to October 6, 1986. This Deferral Agreement was signed by Sharon Fagan, the Debtor's wife, and Keith Mansfield, the President of the Bank. The due date was again extended on October 21, 1986, until April 6, 1987. This Deferral Agreement was signed by Judy Phillips ("Phillips"), Senior Vice President of the Bank, and the Debtor. Phillips had been with the Bank for thirty years and the Debtor was her immediate superior. The due date was again extended on April 10, 1987, until April 5, 1988. This agreement was signed by Phillips and the Debtor. Finally, on April 8, 1988, the due date was extended until April 5, 1989. During this period, many payments and additional advances were made on this note. On July 20, 1987, the Debtor tendered $6,836.26 to the Bank (the amount due on the note) and instructed the Bank's tellers to apply all but $25.00 on the balance. The purpose of this was to keep the "line of credit" in effect so that he could borrow in the future up to the $10,000.00 limit. The tellers mistakenly applied the full amount on the note and marked it "Paid". Immediately thereafter they discovered their error and crossed out the "Paid" stamp on the note and showed a balance due of $25.00. Subsequently, the Debtor continued to obtain new advances and, from time to time, make payments on the note. The Debtor was discharged from his employment on January 24, 1989, and,

on this date, owed the Bank $9,554.30 on this note.

*Loan Number 2.* The Debtor executed an unsecured "single pay note" in the amount of $6,000.00 on December 17, 1987, which was due and payable on June 17, 1988. The purpose of this loan was to enable the Debtor to buy a car. The monies were advanced to the Debtor and on July 8, 1988, the Debtor paid the loan down to $333.09. On July 11, 1988, the Debtor entered into a Deferral Agreement with Phillips whereby the balance due under the note ($333.09) was extended to December 14, 1988. On December 6, 1988, the Debtor borrowed an additional amount of $5,650.00 on this note. On January 6, 1989, approximately three weeks after the second maturity date, Phillips and the Debtor again entered into a Deferral Agreement extending the due date until June 14, 1989. The balance due on this note as of January 24, 1989 was $5,983.09.

*Loan Number 3.* This loan is no longer in dispute and is held to be dischargeable by agreement of the parties.

*Loan Number 4.* On June 16, 1988, the Debtor executed a "single pay note" in the amount of $3,425.00 with a due date of December 16, 1988. This note was secured by a 1985 Ford Pick Up Truck and the Certificate of Title, showing the lien of the Bank, was placed in the loan file. Thereafter the Debtor, who had purchased the truck with the proceeds of the loan, sold the truck, released the Bank's lien on the Certificate of Title and delivered the truck and Certificate of Title to the buyer. The Debtor then made several payments on the note and on October 11, 1988, the balance due was $1.00. On December 12, 1988, Phillips and Debtor entered into a Deferral Agreement, at the Debtor's request, and the due date for the $1.00 balance was extended until March 31, 1989. On December 14, 1988, two days after the extension of the maturity date, the Debtor obtained additional advances of $3,400.00 on this note. On January 24, 1989, the balance due was $3,401.00, which was now unsecured.

*Loan Number 5.* On July 11, 1988, the Debtor executed a "single pay note" in the amount of $2,700.00 due on January 11, 1989. The Debtor used the proceeds to purchase a 1984 Buick, which secured the loan. The Certificate of Title, showing the Bank's lien, was placed in the loan file. On or about September 22, 1988, prior to the expiration of the original due date, the Buick was sold, the lien released from the Certificate of Title, and the loan paid down to $1.00. Thereafter, on December 14, 1988, a new advance of $2,650.00 was made, which was unsecured. The balance due was $2,650.00 on January 24, 1989.

*Loan Number 6.* On September 15, 1988, the Debtor executed an unsecured "single pay note" in the amount of $14,000.00. Advances were made in this amount to the Debtor and he made no payments on this note. The balance due was $14,000.00 on January 24, 1989.

At the time of all these transactions, there was in full force and effect, the following statutes and regulations of the United States of America.

Title 12, Section 375(a) of the United States Code provides as follows:

**§ 375(a). Loans to executive officers of banks**

**(1) General prohibition; authorization for extension of credit; conditions for credit**

Except as authorized under this section, no member bank may extend credit in any manner to any of its own executive officers. No executive officer of any member bank may become indebted to that member bank except by means of an extension of credit which the bank is authorized to make under this section. Any extension of credit under this section shall be promptly reported to the board of directors of the bank, and may be made only if—

(A) the bank would be authorized to make it to borrowers other than its officers;

(B) it is on terms not more favorable than those afforded other borrowers;

(C) the officer has submitted a detailed current financial statement; and ...

Regulation O of the Board of Governors of the Federal Reserve System in regard to loans to executive officers contains the same provisions as the statute cited above.

The only financial statement submitted by the Debtor to the Bank was in 1986 when he commenced his employment.

Regular customers of the Bank would not be allowed to receive additional advances on "single pay notes" once the balance had been reduced, would not have been allowed to take additional advances on secured notes once the collateral had been released, and would not be allowed to obtain loans without a current financial statement on file.

### CONCLUSIONS OF LAW

Section 523(a)(2)(A) of the Bankruptcy Code provides in part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt— ...

(2) for money ... to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, ...

Section 523(a)(4) of the Bankruptcy Code provides as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

Actual fraud is defined in Volume 3 COLLIER ON BANKRUPTCY, page 532–52 as follows:

**■—What Constitutes Actual Fraud.**

Section 523(a)(2) added to the false pretenses and representation exception to discharge, the words "or actual fraud."

Actual fraud, by definition, consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception. (n. omitted)

Embezzlement is defined in *In re Wallace,* 840 F.2d 762 (10th Cir.1988) as follows:

As noted above, a debt for embezzlement is nondischargeable under section 523(a)(4). For purposes of establishing nondischargeability under section 523(a)(4), embezzlement is defined under federal common law as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." ...

See also *In re Graziano,* 35 B.R. 589 (Bankr.E.D.N.Y.1983), *In re Choisnard,* 98 B.R. 37 (Bankr.N.D.Okl.1989), *Matter of Burgess,* 106 B.R. 612 (Bankr.D.Neb.1989).

*Loan Number 1.* Loan Number 1 is nondischargeable because the Debtor obtained these funds in knowing violation of federal law and regulations. Obtaining the money in this manner amounts to obtaining money by actual fraud and embezzlement. The Debtor had not submitted a current financial statement when he obtained additional advances in 1987 and 1988 after he had paid the balance down to $25.00. This violated the federal laws and regulations stated above. The Court finds the Debtor, as an experienced banker, had knowledge of these laws and regulations and knowingly violated them. The Court also finds that similar advances would not have been made to regular bank customers; therefore, the Debtor, because of his position as Executive Vice President, received special treatment. This is also prohibited by said federal laws and regulations.

A bank can only make loans to its officers in compliance with the law. As the Bank's Executive Vice President, the Debtor was entrusted with and had control over the funds of the Bank. He took advantage of this position and obtained unlawful advances from the Bank. Knowingly obtaining money in this manner comes within the definition of embezzlement as stated in the *Wallace* case, supra.

*Loan Number 2.* This debt is also nondischargeable because the Debtor received special treatment, because no current financial statement was on file, and because

Loan Number 2 was a "single pay note". The Debtor knew he could not obtain additional advances on a "single pay note" after paying the balance down to $333.09. The Debtor knew he was violating federal law and knew he was not allowed to obtain these additional advances on a "single pay note". Therefore, his obtaining the advances in this manner amounts to actual fraud and embezzlement.

*Loan Number 4.* The Debtor again obtained additional advances after paying down a "single pay note". Again, no current financial statement was on file and the Debtor received special treatment. Additionally, when the note was paid down to $1.00, the Debtor released the collateral for the loan and then obtained the new advances. In effect, the Debtor turned a secured note into an unsecured one. The new unsecured advances on a previously secured note were not approved by the Board of Directors or any superior. The Debtor's actions in regard to Loan Number 4 amount to obtaining money under actual fraud and embezzlement.

*Loan Number 5.* This debt is also nondischargeable for the same reasons stated under Loan Number 4. This note was a "single pay note" that was paid down to $1.00, the collateral released and new advances made.

*Loan Number 6.* Loan Number 6 is the most recent loan and it would be dischargeable except for the fact the Debtor had no current financial statement in the file; therefore, the Bank's loan to him was prohibited. The Debtor knew of these regulations and laws and obtained an unlawful loan; therefore, the amount of this debt is nondischargeable for the reasons stated above.

It should be noted that all of the unlawful advances in this case obtained by the Debtor from the Bank occurred in December 1988 at approximately the same time. These advances were obtained about six weeks prior to the Debtor's termination at the Bank and the Court infers the Debtor was borrowing as much on these notes as he could prior to being found out and his source of credit being shut down. The Court will enter a separate order finding the debts to the Bank and Ohio nondischargeable.