In re Jesse Bedford COBERLEY and Cindy Jan Coberley, a/k/a Cindy Jan Fosdick, f/d/b/a J. C. Recycling, Debtors.

The IOLA STATE BANK, Plaintiff,

v.

Jesse Bedford COBERLEY, Cindy Jan Coberley, and F. Stannard Lentz, Trustee, Defendants.

Bankruptcy No. 81–20459.
Adv. No. 81–0244.

United States Bankruptcy Court, D. Kansas.

June 3, 1982.

**558**

Blake Hudson, of Hudson, Hudson & Mullies, Fort Scott, Kan., for debtors/defendants.

John R. Toland, of Toland & Thompson, Iola, Kan., for plaintiff.

F. Stannard Lentz, Mission, Kan., Trustee.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for trial on January 27, 1982, upon a Complaint to Determine the Dischargeability of three debts, under 11 U.S.C. § 523(a)(2)(A). Plaintiff, The Iola State Bank, appeared by its vice-president, Roger D. Parson, and its attorney, John R. Toland of Toland & Thompson. Defendants/debtors, Jesse and Cindy Coberley, appeared in person and by their attorney, Blake Hudson of Hudson, Hudson & Mullies. The trustee, F. Stannard Lentz, did not appear.

## FINDINGS OF FACT

After hearing testimony of witnesses, reviewing the exhibits, briefs, pleadings and the file herein, this Court finds as follows:

1. That this Court has jurisdiction over the parties and the subject matter; and that venue is proper.

2. That the Coberleys filed a petition for relief under Chapter 7 of Title 11 United States Code on May 19, 1981; and on October 22, 1981, they received a discharge, subject to the Court's determination of the dischargeability of the three debts at issue herein.

3. That the first debt was incurred on July 9, 1980, when The Iola State Bank (hereinafter referred to as ISB) loaned the Coberleys $2,600.00. They used the proceeds to buy a 1979 24-foot gooseneck trailer from Boyd Trailer Sales; and they granted ISB a security interest in the same. ISB did not file a notice of security interest to perfect its lien; rather, it asked Boyd Trailer Sales to see that its lien was noted on the title. The lien was never noted on the title because Boyd was never able to produce a title for the 1979 trailer. On July 24, 1981, Boyd let the Coberleys exchange the 1979 trailer for a 1980 Hale 20-foot trailer, which had good title. Neither Boyd or the Coberleys told ISB about the switch of trailers; and neither Boyd or the Coberleys had ISB's lien noted on the 1980 trailer. Instead, on the same date of the switch of trailers, the Coberleys borrowed $2,800.00 from Security State Bank, and granted it a security interest in the 1980 trailer. Security's lien was noted on the title of the 1980 trailer. ISB subsequently repeatedly asked the Coberleys to bring the title to the 1979 trailer into the bank, so that the bank could make sure its lien was noted on the title. The Coberleys ignored these requests. Not until March or April of 1981, when Mr. Parson confronted Jesse Coberley at home, did Jesse Coberley tell ISB that he had a different trailer than the one shown on ISB's security agreement.

4. That the second debt was incurred on September 15, 1980, when ISB loaned the Coberleys $3,146.64 and took a security interest in a used 1976 Ford pick-up truck. Mr. Parson noted the lien on the back of the title, and instructed Jesse Coberley to mail the title into the Motor Vehicle Department for recording. Coberley never mailed it in.

5. That the third debt was incurred on January 27, 1981, when ISB loaned the Coberleys $5,880.00 and took a 45-day promissory note and a security interest in a purchase order. Parson had to get approval from the bank's discount committee because the two previous notes were then delinquent. Jesse Coberley told Parson that he needed the money for operating expenses,

because 30 to 45 day delays in payments on purchase orders had created a cash flow problem for his company. Jesse Coberley assured Parson that once payment came in on the pledged purchase order, he could pay this note and bring the other two notes current. Jesse Coberley also told Parson that the purchase order had been received through Wade Coberley, his father, who was acting as a broker in the transaction. Parson called Wade Coberley, who verified the order. Wade Coberley also promised Parson that he would see that payment on the order was made directly to ISB. After the 45 days passed, Parson asked Jesse Coberley when ISB could expect payment. Jesse Coberley then told Parson that the order had been cancelled. Wade Coberley told Parson that if Jesse Coberley would deliver the goods, he would accept them. Then Jesse Coberley admitted to Parson that he had never manufactured the order, and did not have the materials to manufacture the order.

## CONCLUSIONS OF LAW

Plaintiff, ISB, objects to the dischargeability of three separate and distinct debts under 11 U.S.C. § 523(a)(2)(A). That section states:

"§ 523. Exceptions to discharge.

*(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—*

\* \* \* \* \* \*

*(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—*

*(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...*"

Pursuant to Bankruptcy Rule 407, which continues in effect under the Code, the creditor objecting to a discharge has the burden of proving the facts essential to the objection. The creditor must make out a

prima facie case. *Johnson v. Bockman*, 282 F.2d 544 (10th Cir. 1960).

The Ninth and Seventh Circuits adopted a five element test for determining when a debt was nondischargeable under § 17a(2) of the old Act. *Matter of Nelson*, 561 F.2d 1342 (9th Cir. 1977); *Carini v. Matera*, 592 F.2d 378 (7th Cir. 1979).[1] Although this Circuit has not adopted the test, it is a useful guideline. The objecting creditor must prove five elements:

1. That the debtor made the representation;

2. That at the time made, the debtor knew the representation was false;

3. That the debtor made the representation with the intent to deceive the creditor;

4. That the creditor reasonably relied on the representation; and,

5. That the creditor sustained damage as a proximate cause.

### I.

With respect to the July 9, 1980 loan, ISB contends that the Coberleys defrauded it of its security interest in the 1979 trailer. This Court finds that ISB failed to make out a prima facie case under § 523(a)(2)(A).

The evidence established that at the time of the loan, the Coberleys intended to and did, grant ISB a security interest in the 1979 trailer. Through no fault of the Coberleys, the seller was unable to produce a title for the 1979 trailer, so they prudently accepted the seller's offer to exchange the 1979 trailer for a trailer with good title. Although the Coberleys should have apprised ISB of these subsequent events, their negligent or even willful failure to do so is not evidence of an intent to deceive at the time the loan was made. The fraud and the intent to deceive must occur at the inception of the loan; subsequent bad acts are not actionable. Therefore, the debt to ISB for the July 9, 1980 loan is discharged.

1. *Section 523(a)(2)(A) does not substantively change the pre-Code law. Thus, cases constru-* *ing § 17a(2) are persuasive.*

## II.

ISB contends that the Coberleys obtained the September 15, 1980 loan by falsely representing that they would mail the certificate of title to the Kansas Motor Vehicle Department, so that ISB's lien could be recorded. Again, ISB failed to make out a prima facie case under § 523(a)(2)(A).

It appears that the Coberleys did not represent they would mail in the title; rather, Mr. Parson instructed them to. Even if their passive acquiescence could rise to the level of a false representation, the Court doubts that any such representation was what induced ISB to make the loan. It appears that after the paper work was done and the transaction completed, Mr. Parson mentioned to the Coberleys, in passing, that they should mail in the title. Furthermore, even if such a representation was made and even if ISB was thereby induced, this Court could not find ISB's reliance on such representation reasonable. A reasonable creditor does not rely on the debtor to mail in the title. A reasonable creditor mails in the title himself, or files a notice of security interest as provided for in K.S.A. 8–135 (1980 Supp.) Therefore, the debt to ISB for the September 15, 1980 loan is discharged.

## III.

With respect to the January 27, 1981 debt, the Court heard conflicting testimony from Mr. Parson, Jesse Coberley, and Wade Coberley, Jesse's father. The Court had the opportunity to observe their demeanor and manner of testifying, and has given more credence and weight to Mr. Parson's testimony, as is the Court's discretion to do. See *Volis v. Puritan Life Ins. Co.*, 548 F.2d 895, 901 (10th Cir. 1977).

Jesse Coberley represented to Mr. Parson that they had a lucrative purchase order for 10,000 to 12,000 pounds of scrap metal, made through Wade Coberley, who was acting as their broker. He represented that the order was complete and that delivery was imminent. They needed money for operating expenses in the 30 to 45 day interim before they would receive payment on the order. To that end, Parson loaned them $5,880.00, after getting approval from the ISB discount committee.

At the time Jesse Coberley made such representation, he knew it was false. He later admitted that he did not complete production of the order before he obtained the loan. In fact, he only manufactured a small part of it. Wade Coberley's testimony indicated that he gave the Coberleys the purchase order so that they could borrow money against it. Wade never had acted as a broker for purchase orders for the Coberleys before. It appears that the purchase order was placed and accepted with the knowledge and intent that it would be used to deceive ISB and induce ISB to loan the Coberleys money.

ISB granted the loan, in spite of the fact that the Coberleys were delinquent on two prior loans, because Jesse assured Parson, that once he was paid for the order, he would be able to pay this loan, and bring the two prior loans current. ISB then checked with Wade Coberley for verification that he had placed such a large purchase order with the Coberleys. Only when he had verified it, did the discount committee approve the loan. The Court finds, from the foregoing facts, that ISB relied on the representations of the Coberleys.

Finally, ISB was damaged as a proximate cause of the false representations. The Coberleys have not made any payment on the $5,880.00 loan. Thus, the debt, comprising the $5,880.00 proceeds plus $130.49 finance charge plus accrued interest from March 13, 1981 to May 19, 1981, at the rate of 18% per annum is not discharged.

The Coberleys' request for attorney fees to the extent they prevailed on any of the counts is denied because there was no showing that ISB's complaint is frivolous or in bad faith.

THIS MEMORANDUM SHALL CONSTITUTE MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.