In re Csaba KOVACS, d/b/a Corporate Construction Consultant, Debtor.

Dominic MUNAFO, Plaintiff,

v.

Czaba KOVACS, Defendant.

Bankruptcy No. 82–1760–JG.
Adv. No. A82–1253–JG.

United States Bankruptcy Court, D. Massachusetts.

Nov. 16, 1982.

Dawn Sprague, South Boston, Mass., for plaintiff.

Michael J. Yerardi, Braintree, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The plaintiff's Complaint alleges that a debt in the amount of $2539.11 owed by the debtor, Csaba Kovacs ("Kovacs" or "the debtor") to the plaintiff, Dominic Munafo ("Munafo") is nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A) because of the debtor's actual fraud and false representations in procuring Munafo's guarantee of a loan obtained by Kovacs. The defendant's Answer admits that Kovacs owes Munafo $2539.11 but denies the nondischargeability of the debt. A trial was held and the Court ordered the parties to submit briefs. The plaintiff filed a thorough brief, and the defendant did not file a brief.

Based upon the testimony of the several witnesses, the documentary evidence, and a review of the applicable law, I make the following findings of fact and rulings of law.

Munafo and Kovacs were friends and in the fall of 1980 Kovacs was renting a room at Munafo's house in Quincy while he looked for an apartment. Kovacs was involved in the construction business as a self-employed consultant. Munafo was a business man who owned an automobile service center in Dorchester.

In early November 1980, Kovacs asked Munafo for a loan of $3500. Kovacs stated that he needed the money to place a bid on a contract to build a fence, which would

prove very profitable to him. Kovacs requested the money immediately in the form of a certified check. They agreed that Kovacs would repay the loan in thirty days. Kovacs testified that at this time he had been procuring a fence contract for a friend, who is now deceased, by means of his contacts with the company awarding the contract. He was to receive a finder's fee of $4,000 out of his friend's $16,000 profit. In his testimony, Kovacs insisted that he did not tell Munafo that the loan was for a bid, but he could not explain why he requested the funds in the form of a certified check. On November 1980, Munafo gave Kovacs a certified check drawn on the State Street Bank checking account of his business, Dorchester Brake and Muffler Service Center. The check was endorsed by Csaba Kovacs and paid on November 9, 1980.

After two months, the loan remaining unpaid, Munafo questioned Kovacs about the fence contract. Kovacs responded that the contract was delayed. Munafo indicated that it was necessary to reimburse his business account and that he would refer Kovacs to the State Street Bank to obtain a loan.

The bank initially denied Kovacs' request for a loan. In January 1981, Munafo accompanied Kovacs to the State Street Bank where they met with a loan officer, Gerald Culhane. Kovacs indicated to the bank officer that the purpose of the loan was to reimburse Munafo's business account to repay the prior loan for the fence contract bid. Mr. Culhane suggested that instead of stating this commercial purpose on the loan application that the application state that it was to pay personal bills. In this way, the approval process would move faster. Mr. Culhane also suggested that the repayment term be extended so that Kovacs could establish credit. The bank required that Munafo cosign the note and provide collateral for Kovacs' loan. Munafo guaranteed the loan and pledged a $5,000 savings account as security for repayment. Munafo testified that he would not have made the original loan or guaranteed the Kovacs' loan had he known that a

fence contract did not exist. The bank approved the loan of $3500 to Kovacs. The proceeds were paid to Munafo, who returned the funds to his business account.

Shortly thereafter, Kovacs moved from Munafo's house. During 1981 Kovacs made payments on the State Street Bank loan totalling approximately $900. The loan became delinquent in 1982, and the bank levied on Munafo's bank account in the amount of $2539.11. When Munafo informed Kovacs about the delinquent loan, Kovacs admitted that he never used the money for a bid on a fence contract, but rather that he used the funds to buy two cars and to pay bills.

Munafo contends that Kovacs' debt of $2539.11 to him, which loss he sustained as a result of the bank's seizure of his savings account, is nondischargeable in bankruptcy because of Kovacs' false representations as to the purpose for the loan.

The issue presented is: whether the debt owed to Munafo, who gave a personal guarantee and pledge of his property to a bank who was lending money to the debtor in order to refinance a prior loan he had given to the debtor to allegedly enable the debtor to bid on a contract, is excepted from discharge under Section 523(a)(2)(A).

■ The debtor contends that he did not make false representations in obtaining the initial loan or the subsequent guarantee from Munafo, and, therefore the debt is dischargeable. Moreover, the debtor asserts that even if there was fraud in the initial loan, this transaction should not be considered because the subsequent loan constituted a novation of the original loan, and that the plaintiff has not demonstrated fraud in the subsequent transaction. The debtor does not address the issue of whether any fraudulent conduct in the first transaction may taint the second transaction. The debtor's attempt to restrict the Court's focus is unmeritorious. The circumstances surrounding both transactions are relevant to determine whether the debt to Munafo arose out of the debtor's actual fraud, false representations, or false pre-

tenses. Where a borrower makes an agreement to repay a debt which arose out of his fraudulent conduct, which repayment attempt fails, any fraud in the underlying claim is not changed by the subsequent agreement. *Hartford Accident & Indemnity v. Flanagan*, 28 F.Supp. 415 (S.D.Ohio 1939); *In Re Rush*, 33 B.R. 97 (Bankr.D. Me.1983); *Greenberg v. Schools*, 21 B.R. 1011 (D.Fla.1982) *aff'd* 711 F.2d 152 (11th Cir.1983).

■ In this case, the underlying debt of Kovacs to Munafo arose out of the November 1980 loan. The sole purpose of the January 1981 transaction with the bank was to reimburse Munafo's business account. They were inextricably linked because Munafo would not have given his guarantee had it not been for the original loan. The Bank loan was so related to the first loan that they must be considered part of the same transaction. I will consider the facts surrounding both transactions in order to determine whether the debt to Munafo is nondischargeable.

Section 523(a)(2)(A) excepts from discharge "any debt ... for obtaining money, property, services, or an extension, renewal or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud..." 11 U.S.C. Section 523(a)(2)(A).

In order for a debt to come within this exception, money, property or services, or an extension, renewal or refinancing of credit must have been obtained by false representations or by means of actual fraud. *L. King, Collier on Bankruptcy*, Section 523.08(1), at 523–35 (15th ed. Supp. 1983). Where a debtor obtains a loan from a person, or his guarantee of an obligation, the debtor has obtained property within the meaning of this section. *L. King, Collier on Bankruptcy, supra*, at 523–37–38.

In order to sustain the burden of proving actual fraud the Plaintiff must show:

1.) that the debtor made representations;
2.) that at the time he knew the representations were false;
3.) that he made them with the intention and purpose of deceiving the creditor;
4.) that the creditor reasonably relied on such representations;
5.) that the creditor sustained the alleged damages as a result of the misrepresentation.

*In Re Singleton*, 37 B.R. 787 (Bankr.D. Nev.1984); *In Re Hunt*, 30 B.R. 425 (D.M. D.Tenn.1983); *L. King, 3 Collier on Bankruptcy*, Par. 523.08(4), at 523–40–42 (15th ed. 1983).

■ A debtor's representation to a creditor that he needs a loan for a particular purpose for a short period of time, which shall be repaid shortly because of his expectations for profit, and the expectations are illegitimate, a finding of misrepresentation is permissible. *See In Re Coberley*, 20 B.R. 557 (Bankr.D.Kan.1982). In this case, I find that Kovacs made similar false representations to Munafo. Kovacs' version, that he told Munafo he needed money to pay personal bills, is incredible. Kovacs did not use the funds for a bid. I find that Kovacs told Munafo that he needed the money to place a bid on a contract and that he would repay Munafo when the profit was realized, when, in fact, this was untrue. Kovacs' statement to Munafo that he needed and would use the loan proceeds for a bid on a contract was false. In addition, I find that his continuing representations to Munafo in the presence of the Bank officer that the funds were used for said purpose, and that a profit was forthcoming, were false representations, known by him to be false at that time.

It must next be determined whether Kovacs intended to deceive Munafo by his misrepresentations. In order for a creditor to sustain his burden on this issue, it must be shown that by the misrepresentations, the debtor intended to induce the creditor into action in reliance on the representation. *W. Norton, Bankruptcy Law and Practice*, Sec. 27.41, at 27–62 (Supp.1984).

■ In both transactions, Kovacs intended his false representations to induce Munafo into extending credit. In the Novem-

ber 1980 transaction his misrepresentation to Munafo that the funds were for the purpose of a bid on a contract which would result in a quick profit, and that the loan would be repaid upon realization of the profit, was calculated to obtain the funds immediately from Munafo. The malevolent design of his scheme is evident from his request that Munafo give him a certified check, which is the normal practice in placing bids. A certified check would be unnecessary if the loan were simply to pay Kovacs' bills. The deceit continued when the loan was refinanced. In the presence of the loan officer, Kovacs maintained that the loan could be immediately repaid because the fence contract was about to materialize. The loan officer suggested a long term payment arrangement to enable Kovacs to establish a credit rating. In this phase of their dealings, I find that Kovacs intended to induce Munafo into guaranteeing the loan, based on the false representation that the Bank would soon be paid, thus rendering the guarantee superfluous. Kovacs' subsequent repayment of certain installments to the bank loan does not compel the conclusion that he did not intend to deceive Munafo. Only his intent at the inception of the debt is relevant in determining dischargeability. *In Re Cokkinias*, 28 B.R. 304 (Bankr.D.Mass.1983).

The plaintiff also is required to show that the creditor changed his position as a result of the debtor's misrepresentation, and that such reliance was reasonable under the circumstances. A lender has a duty to exercise ordinary prudence for his reliance to be considered reasonable. *Matter of Newark*, 20 B.R. 842 (Bankr.N.D.N.Y.1982). A creditor's reliance will not be considered negligent unless he failed to conduct an inquiry where investigation was warranted. *In Re Winfree*, 34 B.R. 879 (Bankr.M.D.Tenn.1983). Here, there is no doubt that Munafo actually relied on Kovacs' statements about the forthcoming payment from a fence contract in extending Kovacs the initial loan and subsequent guarantee. I find that Munafo's reliance on the representations was justifiable and reasonable in the circumstances, even though Munafo did not go so far as to verify the contract's existence. Munafo relied on their personal relationship as friends. There was nothing in their relationship to give Munafo cause for concern that the representations were untrue, because Kovacs was involved in the construction business. The very specific purpose for the loan was plausible, especially since Kovacs insisted on a certified check. That Munafo was diligent throughout the dealings is further evidenced by his requirement that Kovacs obtain bank financing to reimburse Munafo's business account.

It is uncontroverted that Munafo sustained damages as a result of Kovacs false representations as the account he had pledged as collateral was seized by the Bank on account of Kovacs' default to the extent of $2539.11.

For these reasons, the debt of Kovacs to Munafo in the amount of $2539.11 is declared nondischargeable. Judgment shall enter for the Plaintiff in this adversary proceeding.