In re Lewis G. FAINS, Debtor.

GREYHOUND LINES, INC., Plaintiff,

v.

Lewis G. FAINS, Defendant.

Bankruptcy No. 81–03434 T.
Adv. No. 81–1782.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 5, 1984.

J. Jackson Eaton, III, Butz, Hudders & Tallman, Allentown, Pa., for plaintiff.

Michael O. Dixon, Philadelphia, Pa., for defendant.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

In this adversary proceeding, the plaintiff, Greyhound Lines, Inc., has filed a Complaint requesting that the debt owed to it by the Chapter 7 defendant-debtor be determined to be nondischargeable pursuant to Sections 523(a)(2)(A) and 523(a)(4) of the Bankruptcy Code, 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). For the reasons hereinafter given, we shall deny the relief requested in the plaintiff's Complaint and find the debt to be dischargeable.[1]

## I. FACTS

On January 5, 1980, the plaintiff and the defendant executed a contract whereby the defendant became a ticket agent of the plaintiff for the purpose, essentially, of selling Greyhound bus tickets to passengers who wished to depart from the Bethlehem, Pennsylvania Bus Terminal, which the defendant operated. The defendant was not an employee of the plaintiff. The defendant was entitled to a commission of 10% of the value of the tickets that he sold. The contract, entitled Standard Commission Agency Contract, stated, in part, that the defendant, as agent, agrees as follows:

"To be liable for all charges for transportation services sold regardless of collection of such charges. To be liable for and protect at all times any and all money and/or property of the Company in the care or under the supervision of Agent and to reimburse Company for any loss of or damage to such money and/or property. At his expense to furnish an Indemnity Bond in an amount specified by the Company for the protection of company funds and/or property. The title to all tickets and proceeds thereof and of all other monies collected for Company shall be at all times in the Company, it being the intention of this agreement that the Agent shall at all times be in the position of trustee and fiduciary of the same for the Company."

The contract also stated, in part, that the defendant, as agent, agrees as follows:

"To render reports of Company business on the last day of each month and to remit to Company or deposit to account of Company on the last day of each month, or at such other times as may hereafter be prescribed by the Company, all monies belonging to the Company or collected for the account of Company."

The plaintiff required the defendant to make twice-weekly remittances of his ticket sales proceeds (less his 10% commission) by mail to the plaintiff's bank which, in turn, mailed notification of the remittances to the plaintiff.

The defendant was also the ticket agent for four other bus companies which operated through the Bethlehem Bus Terminal. The plaintiff was aware of this and did not object. Also, the contract between plaintiff and the defendant in no way precluded the defendant from being a ticket agent for other bus companies.

From January, 1980 through September, 1980, the defendant generally made the required remittances to the plaintiff's bank, although he was occasionally late. During this time, the defendant made the required monthly reports to the plaintiff. It is undisputed that the defendant owed no money

---

1. This Opinion constitutes the findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

to the plaintiff as of the end of September, 1980. However, the defendant did not make any remittances after the end of September, 1980, although he sold some of the plaintiff's tickets thereafter. Sometime in October, 1980, after learning of the defendant's failure to make any remittances during that month, and after having demanded from and been refused payment by the defendant for the October ticket sales, or any portion thereof, a representative of the plaintiff took the plaintiff's remaining blank unsold tickets from the defendant and terminated the relationship between the plaintiff and the defendant. As a result of the above, the defendant's debt to the plaintiff is $9,075.83 (after deduction of the 10% commission).

At the hearing on this matter, the defendant testified as to the reasons for his lack of making any remittances to the plaintiff in October, 1980. He stated, in essence, that his business of operating the Bethlehem Bus Terminal and acting as ticket agent for five different bus companies, including the plaintiff, had been in financial difficulty, for various reasons, throughout 1980. He had a single Bethlehem Bus Terminal bank account into which he deposited the money he received from ticket sales of all of the bus companies and from which he paid each of them. The remittance procedures and schedules of the various bus companies differed significantly. His expenses in operating the Terminal were such that he often could not afford to make the payments to each bus company as they became due solely out of the proceeds of the ticket sales of the particular company. Therefore, testified the defendant, he began "juggling the money around" (Notes of Testimony, p. 27), a practice by which he often made the scheduled remittances to the various bus companies, including the plaintiff, out of the ticket sales proceeds of both the company to which the remittance was then due and one or more of the other companies. The defendant testified that he felt that his financial situation would improve so that he could soon stop the practice of "juggling the money around" and be able to pay each company solely from the proceeds of its own ticket sales. However, his financial situation did not improve. By October, 1980, his aforementioned money-juggling practice caught up with him and he did not have the funds to pay the money he owed to the plaintiff and some or all of the other companies. He subsequently filed his Chapter 7 bankruptcy petition. It is undisputed that the defendant used the money representing his debt to the plaintiff solely for business purposes (Terminal operational expenses, salaries, supplies, taxes, etc.), and not for his personal use.

## II. DISCUSSION

The plaintiff's main contention is that the defendant's debt to it is nondischargeable pursuant to Section 523(a)(4) of the Bankruptcy Code, 11 U.S.C. § 523(a)(4), which states:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ...."

■ The plaintiff alleges that the defendant was a fiduciary of the plaintiff and that the defendant's debt to it resulted from the defendant's fraud and/or defalcation. Thus, the threshold issue is whether the defendant was acting in a fiduciary capacity with respect to the plaintiff. The plaintiff first points to the language of the contract between the parties, *supra,* which states that "the Agent shall at all times be in the position of trustee and fiduciary ... for the Company." However, with regard to exceptions to discharge in bankruptcy, the language in a contract or document denominating a relationship as a fiduciary or trust relationship is far from dispositive as to the actual nature of the relationship. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 334, 55 S.Ct. 151, 154, 79 L.Ed. 393 (1934). Therefore, we must examine the actual nature of the relationship between the parties to determine if a trust or fiduciary relationship existed.

■ One of the necessary elements for the existence of a trust is a certain and ascertained object or res. *In re Martin,* 35 B.R. 982 (Bkrtcy.E.D.Pa., 1984), pp. 985–986. In the present case, no such certain and ascertained object or res ever existed. The defendant freely commingled the funds received from sales of the plaintiff's tickets with those received from the sales of the tickets of the other bus companies. More importantly, the contract between the plaintiff and the defendant did not require that the plaintiff's funds be segregated from other funds and, thus, did not preclude the commingling of its funds with those of others. Furthermore, the plaintiff was aware of, and did not object to, the aforementioned commingling. Rather, the record tends to indicate that the plaintiff acquiesced in the commingling. Therefore, because no certain and ascertained res ever existed, we find that the defendant was not acting in a fiduciary capacity with respect to the plaintiff. For the same finding on virtually identical facts, involving the same plaintiff and contract, see *Matter of Thurston,* 18 B.R. 545 (Bkrtcy.M.D.Ga.1982). We also note, as did the Court in *Thurston, supra,* that the present case is clearly distinguishable from the unpublished decision in *In re Hunter,* Bankruptcy No. 76–B–2749 (Bankr.S.D.N.Y.1977), on which the plaintiff relies, because, in *Hunter,* the Court made a specific finding of fact that the bankrupt was required to segregate the funds which he received from his sale of Greyhound tickets.

The plaintiff also argues that the defendant's debt to it is nondischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), which states:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . . ."

The plaintiff contends that the above-described actions of the defendant constituted actual fraud and/or false pretenses with respect to the debt owed to the plaintiff by the defendant.

■ In cases under § 523(a)(2)(A) or (B), the plaintiff must prove by "clear and convincing evidence" that a debt is nondischargeable. *In re Tomeo,* 1 B.R. 673 (Bkrtcy.E.D.Pa.1979); *In re Liberati,* 11 B.R. 54 (Bkrtcy.E.D.Pa.1981).

In order to prevail on an action brought under § 523(a)(2)(A), the plaintiff, by such "clear and convincing evidence", must prove:

(1) that the debtor made the representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations; and

(5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Teal,* 35 B.R. 360 (Bkrtcy.E.D.Pa. 1984); *Houtman v. Mann,* 568 F.2d 651 (9th Cir.1978);[2] *In re Stewart,* 10 B.R. 214 (Bkrtcy.C.D.Cal.1981).

■ In the present case, the plaintiff has failed to allege specifically, much less prove, that the defendant made false representations to it. Further, the record does not indicate any such false representations. The defendant was under an obligation to make twice-weekly remittances to the plaintiff, which he generally did until financially unable to do so in October, 1980. The defendant was also under an obligation to make the aforementioned monthly reports to the plaintiff at the end of each month. He did so in a timely manner through the end of September, 1980, and there is no

**2.** Decided under § 17a(2) of the Bankruptcy Act of 1898, which is the almost identical pre-

cursor to § 523(a)(2)(A) of the Bankruptcy Code.

evidence, nor does the plaintiff suggest, that these reports were in any way inaccurate or misleading. Of course, no monthly report was made for October, 1980 because the plaintiff and the defendant had ceased their business relationship before the end of that month. The defendant had no other duty to account to the plaintiff for monies received besides the monthly reports and twice-weekly remittances.

Also, as discussed *supra,* the defendant was not contractually or otherwise required to segregate the funds received from the sales of the plaintiff's tickets. Thus, his commingling of those funds with other funds, with the knowledge and acquiescence of the plaintiff, certainly cannot constitute a false representation.

Furthermore, the plaintiff conducted no independent audits of the defendant's business. Therefore, obviously, there could be no false representations by the defendant in this regard.

We note that the plaintiff has cited no cases in support of its position that the defendant herein has made false representations, and we are aware of none.

We conclude that the debt in question is not rendered nondischargeable pursuant to § 523(a)(2)(A).

█ Finally, the plaintiff briefly argues that the debt in question should be nondischargeable because it resulted from the defendant's embezzlement of the plaintiff's money pursuant to the above-quoted § 523(a)(4). "Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." 3 Collier on Bankruptcy Para. 523.14[3], p. 523–107 (15th ed. 1983). *Matter of Thurston, supra,* 18 B.R. at 550. In our discussion of § 523(a)(2)(A), *supra,* we have already determined that the debt in question did not result from the defendant's fraud. Therefore, we find that no embezzlement occurred on the part of the defendant in this case.

█ Even were we to determine the issue of embezzlement by reference to state law,

as the plaintiff suggests, the result would be the same because the Pennsylvania embezzlement statute, 18 Pa.C.S.A. § 4113, requires that the alleged offender be a fiduciary, which the defendant is not.

For all of the foregoing reasons, we conclude that the debt of $9,075.83 owed by the defendant to the plaintiff is dischargeable.