In re Natalie S. PAVELKA, Debtor.

Richard R. RUMCHAKS, Administrator of the Estate of Bernice Sanders, deceased, Plaintiff,

v.

Natalie S. PAVELKA, Defendant–Debtor,

and

James R. Leonard, Defendant–Trustee.

Bankruptcy No. 86–01050 T.
Adv. No. 86–0619.

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 22, 1987.

Barry A. Solodky, Blakinger, Byler, Thomas & Chillas, Lancaster, Pa., for plaintiff.

Patricia A. Kotchek, Zimmerman, Pfannebecker & Nuffort, Lancaster, Pa., for defendant.

James R. Leonard, Jr., Lancaster, Pa., Trustee.

## MEMORANDUM AND OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

We now address a motion for partial[1] summary judgment on this complaint to determine dischargeability pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). We deny the motion because the pleadings highlight genuine issues of material fact regarding the intent of the debtor and an underlying agreement creating a special relationship between the parties.

Plaintiff, Richard R. Rumchaks ("plaintiff") is the administrator of the estate of Bernice Sanders, deceased ("Sanders"). Defendant-debtor,[2] Natalie S. Pavelka ("debtor"), filed for relief under chapter 7 on March 3, 1986.

The parties agree to the following bare details. During 1981, Sanders moved to Florida and funds were put into a joint account in the name of Sanders and the debtor. These joint accounts were a "mechanism" by which debtor could assist Sanders with the administration of her funds. Their subsequent relationship involved transfers of money and personal property, culminating in late 1982 when plaintiff[3] filed a civil action in a Florida state court for the sum of Twenty One Thousand ($21,000.00) Dollars, representing Sanders' funds used to purchase a trailer titled in debtor's name ("Settlement I"). In December of 1983, plaintiff[4] filed a separate state court action seeking recovery of funds and/or property allegedly converted by debtor. In settlement of this lawsuit, debtor executed a promissory note ("note") in the amount of Sixteen Thousand ($16,000.00) Dollars, payable in monthly installments of One Hundred Ninety–Four and 13/100 ($194.13) Dollars ("Settlement II"). Debtor soon defaulted.[5]

We cannot overlook the fact that plaintiff has not supported his response with the required affidavits,[6] as a result of which it falls short of the requirements in Rule 56(e).[7] In many cases we would be tempt-

---

1. The complaint also objects to the discharge pursuant to 11 U.S.C. § 727.

2. The second defendant is the chapter 7 trustee, who has taken no position on this motion.

3. Plaintiff-administrator was at that time acting as guardian for Sanders, an incompetent. Under the settlement, debtor would return a trailer and pay Two Thousand Two Hundred and Fifty ($2,250.00) Dollars in payments of Seventy–Five ($75.00) Dollars per month ("Settlement I"). The pleadings do not contain a copy of this settlement agreement, nor is it alleged that any default occurred.

4. Plaintiff was again acting as guardian.

5. Plaintiff requests that we find that Sixteen Thousand ($16,000.00) Dollars is non-dischargeable. His basis for this figure is unclear. If he is asking that the funds embodied in Settlement II be declared non-dischargeable, he has miscalculated. The parties agree that the base amount of the note was Sixteen Thousand ($16,000.00) Dollars and that debtor made four (4) or five (5) payments on that obligation. Thus the correct figure would be Sixteen Thousand ($16,000.00) Dollars less Seven Hundred Seventy–Six and 52/100 ($776.52) Dollars or less Nine Hundred Seventy and 65/100 ($970.65) Dollars.

6. The response to the motion states in relevant part that the plaintiff "... hereby responds ... by stating that there are material questions of fact to be determined by the court and that the motion for partial summary judgment should be dismissed." It is signed by counsel for plaintiff.

7. Rule 56 ...

(e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein ...

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, *if appropriate,* shall be entered against the adverse party. Fed.R.Civ.P. 56(e), incorporated into the Bankruptcy Rules by Bankruptcy Rule 7056 (emphasis added).

ed to end our analysis and grant the motion. But we are well aware that plaintiff is in the unenviable position of representing a woman no longer able to submit an affidavit.[8] We do have the power, however, to continue our analysis. Rule 56(f) provides:

(f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had *or may make such other order as is just.*

Fed.R.Civ.P. 56(f) (emphasis added).

We continue our analysis because we are persuaded that the words "if appropriate" in Rule 56(e) mean that a "... court cannot automatically grant a movant's summary judgment motion when the opposing party fails to comply with the requirements ... it is incumbent upon the court to review the materials submitted in support of the motion to determine if they establish the absence of a genuine issue of fact, even if no opposing evidence is offered." *Murray v. Day (In re Day),* 4 B.R. 750, 753, *appeal dismissed,* 633 F.2d 217 *and sub nom In re Day,* 633 F.2d 214, *citing* Advisory Committee Note to the 1963 Amendments to Rule 56.

The issue before us is complicated but narrow: whether, considering the existence of the previous out-of-court settlement of a lawsuit based on the facts underlying the case sub judice, the facts present sufficient evidence of fraud, false pretenses, false representation, fiduciary defalcation, larceny, embezzlement or willful or malicious injury to support the entry of summary judgment?

Buried in the briefs are two issues confused by the parties. The first is the scope of our review on summary judgment. It is axiomatic that summary judgment is such a drastic [9] remedy that evidence must be viewed in the light most favorable to the party opposing the motion.[10] The court may grant summary judgment only if, using these guidelines, no genuine issue of material fact remains for trial.[11]

■ The critical issue in this case is whether the note provides dispositive evidence for summary judgment. This precise issue was raised in our district. *Wilmington Trust Company v. Behr (In re Behr),* 42 B.R. 922 (Bankr.E.D.Pa.1984). Wilmington Trust sued the Behrs in state court, claiming that they had deposited worthless checks and converted funds. The attorneys stipulated to entry of judgment in favor of Wilmington Trust. Defendants filed their bankruptcy case when they were unable to make the stipulated payments. *Id.* at 924. The court rejected the argument that summary judgment should be granted because the state complaint and stipulation were "sufficiently probative" of the defendants' intentional conversion. *Id.* We note, as did the *Behr* court, that the instant stipulation did not "... contain any admission by the defendants of intentional or willful wrongdoing on their part ..."[12] *Id.* at 926. Thus, we

---

**8.** We note that Mr. Rumchaks, the administrator of the Sanders estate, is available to provide a complete affidavit. However, he may not have personal knowledge of all of the facts at issue in this motion for summary judgment.

**9.** *Bobroff v. Continental Bank (In re Bobroff),* 37 B.R. 847, 850 (E.D.Pa.1984), *rev'd on other grounds* (lack of jurisdiction), 43 B.R. 746 (E.D. Pa.1984), *aff'd* 766 F.2d 797 (3d.Cir.1985), *citing Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d.Cir.1981).

**10.** *Bobroff v. Continental Bank,* 37 B.R. 847, 850, *citing Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1978), *cert. den.* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). *Accord, Schaps v. Bally's Park Place, Inc.,* 58 B.R. 581, 582 (E.D.Pa.1986), *aff'd sub nom Bally Park Place Hotel and Casino v. Rush,* 815 F.2d 693 (3d.Cir.1987).

**11.** *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d.Cir.1983).

**12.** The court explained that it might have reached a different decision had the stipulation clearly stated that the allegations in the complaint were admitted as true. *In re Behr,* 42 B.R. 922,926.

find that the note in this case is not dispositive on the issue of defendant's intent.

*Behr* does not address the question of whether we can look at the transactions underlying the note to assist in determining whether summary judgment should be granted. We have that power, however, by virtue of the scope of summary judgment: we must determine whether "... the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue to any material fact ..." Fed.R.Civ.P. 56(c). Plaintiff has not cited any authority for the proposition that we must be limited to a review of the note itself on summary judgment [13] and we have found no such limitation in the case law. There is a dearth of case law on the specific question of whether we may factor the events underlying the settlement into our determination of *summary judgment.* The cases cited by the parties discuss the propriety of such an inquiry during the *trial of the adversary complaint. See e.g., Greenberg v. Schools,* 711 F.2d 152, 153 (11th Cir.1983); *Capital Ins. Agency v. Carneal (In re Carneal),* 33 B.R. 922 (E.D. Va.1983). This lack of precedent is no doubt a result of the clear language of Rule 56(f), which requires a broad inquiry on summary judgment that includes transactions underlying state court settlements. *Accord, Southern Federal Savings & Loan v. Fellows (In re Fellows),* 22 B.R. 40, 42 (Bankr.E.D.Va.1982).

We also query whether any "taint" from the conduct underlying settlement I may spread to settlement II, thus requiring us to review both transactions together. *See*

generally, *Munafo v. Kovacs (In re Kovacs),* 42 B.R. 1, 2 (Bankr.D.Mass.1982). If, for example, debtor had also defaulted on settlement I, the pattern of defaults might be circumstantial evidence of her state of mind.

This leads to the second issue raised by the cases in the briefs: our ability to review at trial the facts giving rise to the note. Clearly, we need not rule now on the scope of our inquiry at trial, except to note that the parties will be given ample opportunity to state any evidentiary objections on the record.

Ascertaining the existence of a material fact requires that we develop the perimeters of the law to which these facts are to be applied. Proof that § 523(a)(2)(A) fraud, false pretenses or false representations have occurred will require proof of moral turpitude or intentional wrong.[14] *Conibear v. Alspach (In re Alspach),* 76 B.R. 499, 501 (E.D.Pa.1987), *Volk of Philadelphia, Inc. v. Gelfand (In re Gelfand),* 47 B.R. 876, 879, 12 C.B.C.2d 682, 685 (Bankr. E.D.Pa.1985).

The threshold issue for proving § 523(a)(4) fraud or defalcation is identifying the existence of a fiduciary relationship. *Greyhound Lines Inc. v. Fains (In re Fains),* 37 B.R. 539, 541 (Bankr.E.D.Pa. 1984). This fiduciary relationship embodies an express trust, *Drinker, Biddle & Reath v. Bacher (In re Bacher),* 47 B.R. 825, 829 (Bankr.E.D.Pa.1985), which can be created by consensual agreement. *See e.g., Wilmington Trust Co. v. Martin (In re Martin),* 35 B.R. 982, 985 (Bankr.E.D.Pa.1984) Fiduciary "(d)efalcation includes the failure

---

**13.** The scope of inquiry at trial may extend to the transactions underlying the note. *See generally, Greenburg v. Schools,* 711 F.2d 152, 153, 156 (11th Cir.1983) (the obligation embodied in the settlement agreement was not discharged; the underlying debt was the result of the debtor's fraud, not his breach of the settlement agreement); *MA & NM, Inc. v. Supple (In re Supple),* 14 B.R. 898, 904 (Bankr.D.Conn.1981) (state court had found a "willful conversion," but bankruptcy court was not bound by that determination of wilfulness); *Munafo v. Kovacs (In re Kovacs),* 42 B.R. 1, 3 (Bankr.D.Mass.1982) (when a debtor signs an agreement to repay a debt based on fraudulent conduct, the fraud is not changed by the subsequent agreement), *cit-*

*ing Hartford Accident & Indemnity v. Flanagan,* 28 F.Supp. 415 (S.D.Ohio 1939); *In re Rush,* 33 B.R. 97 (Bankr.D.Me.1983).

**14.** The creditor alleging false representation must prove that debtor (1) made a materially false representation; (2) that the representation was made with intent to deceive; (3) that the creditor justifiably relied on the representation, and (4) that the creditor sustained proximate damage. *Fluehr v. Paolino (In re Paolino),* 75 B.R. 641, 646 (E.D.Pa.1987); *In re Hammill,* 61 B.R. 555, 556 (Bankr.E.D.Pa.1986); *In re Woods,* 66 B.R. 984 (Bankr.E.D.Pa.1986).

of a fiduciary to account for money he received in his fiduciary capacity." *Bellity v. Wolfington (In re Wolfington),* 48 B.R. 920, 923 (Bankr.E.D.Pa.1985) No specific intent is necessary to find § 523(a)(4) fraud or defalcation. *Carlisle Cashway, Inc. v. Johnson,* 691 F.2d 249, 254 (6th Cir.1982) (interpreting similar provisions in § 17(a)(4) of the Act); *In re Martin,* 35 B.R. 982, 989.

We have previously found that embezzlement is "... the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *In re Fains,* 37 B.R. 539, 543, *citing* 3 Collier on Bankruptcy, para. 523.14(3), p. 523–107 (11th ed. 1983). Embezzlement differs from larceny "... in the fact that the original taking of the property was lawful, or with (the) consent of the owner, while in larceny the felonious intent must have existed at the time of the taking." *Homemakers, Inc. v. Salamone (In re Salamone),* 78 B.R. 74, 77 (E.D.Pa.1987) *citing* 3 Collier on Bankruptcy para. 523.24(a), at 523–98.

Plaintiff also alleges that debtor converted funds. If the debtor lacked the conscious intent to violate Sanders' rights, debtor committed only a technical conversion and the debt will be dischargeable. *In re Behr,* 42 B.R. 922, 925. However, if the debtor had willful and malicious intent, the claim will be excepted from discharge. "Willful" includes deliberate or intentional conduct. *Finberg v. Lean,* 18 B.R. 189, 191 (Bankr.E.D.Pa.1982), *citing* H.R.Rep. No. 595, 95th Cong. 2d Sess. 363, 1978, S. Rep. No. 989, 95th Cong. 2d Sess. 77–79 (1978), U.S. Code Cong. & Adm. News, 1978, p. 5787.

■ Allowing this case to proceed to trial would not, as debtor suggests (without support), violate her right to due process and other constitutional protections. Although the note purported to release debtor from future liability,[15] we cannot give debtors unfettered power to erase their non-dischargeable debts through a well-timed settlement agreement. *Accord, In re Greenberg,* 711 F.2d 152, 155; *United States Fidelity & Guar. Co. v. Rush,* 33 B.R. 97–98 (Bankr.D.Me.1983). A debtor's "fresh start" is not absolute; the Code embodies a delicate balance between the rights of debtors and the rights of defrauded creditors.

We are "... reluctant to draw fact inferences relating to state of mind when ruling ... The drawing of fact inferences is more properly the function of the trier of facts and should rarely be attempted by the court on a motion for summary judgment."[16] *Savitsky v. Katz (In re Katz),* 20 B.R. 394, 399 (Bankr.D.Mass.1982), *citing Empire Electronics v. U.S.,* 311 F.2d 175 (2d Cir.1962).

■ A genuine issue of material fact exists with respect to whether § 523(a)(4) fraud or defalcation occurred. The bank accounts were a "mechanism" through which debtor could assist Sanders in administering her funds. Debtor claims that some unspecified agreement existed between Sanders and debtor. *See* answer, paragraph 22. Accepting these allegations as true, a fiduciary relationship may have existed.

Blatant disagreement exists as to whether debtor acted with Sanders' knowledge and consent when she 1) withdrew funds from the joint account for her sole use; 2) issued a check payable to cash drawn on Sanders' individual account and signed Sanders' name to the check; 3) negotiated an insurance check payable to Sanders for her own benefit; 4) collected mortgage checks payable to Sanders and cashed the checks, and 5) removed certain items of personal property from Sanders' home for her own personal use. *See* complaint and answer, paras. 10, 14, 16, 18 and 23. Such assertions raise dispositive questions of in-

---

15. A similar clause was part of the *Behr* stipulation, and that court did not note any constitutional concerns. *In re Behr,* 42 B.R. 922, 926. Indeed, a party would be foolish not to include a release in a stipulated settlement of a state court action.

16. *Accord, In re Esposito,* 44 B.R. 817, 821 (Bankr.S.D.N.Y.1984) ("Normally proceedings involving discharge and dischargeability are not grist for summary judgment motions. This is because they most often involve issues of intent, gleaned from invariably disputed facts.")

tent, such as 1) whether a conversion occurred, and, if so, whether it was a technical conversion or involved willful and malicious intent; 2) whether Pavelka had any felonious intent at the time she removed or used Sanders' property, and, if not, whether the subsequent use of the property constituted a fraudulent appropriation. Reviewing the pleadings, reasonable persons could draw different inferences. Under the circumstances, we must deny debtor's motion for partial summary judgment.