**In re Iona Z. WHITE, Debtor.**

**No. 01–06741–9P3.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Dec. 18, 2001.

Edward R. Miller, Miller & Hollander, Naples, FL, for Debtor.

Terry E. Smith, Bradenton, FL, Chapter 13 Trustee.

### ORDER OVERRULING OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN AND CONFIRMING DEBTOR'S PLAN

ALEXANDER L. PASKAY, Chief Judge.

(Doc. No. 14A)

The matter under consideration in this yet-to-be-confirmed Chapter 13 case, is an Objection to confirmation of the Chapter 13 Plan of Iona Z. White (Debtor). The Objection was filed by James L. Hammer, as Administrator of the Estate of Ruth B. Hicks (Hammer), who contends that the Debtor's current Chapter 13 Plan (Plan) is

premised upon bad faith. The record reveals the following undisputed facts.

On July 3, 2000, the Debtor filed her first voluntary Petition for relief under Chapter 13, in this Court (the First Chapter 13 Case). On March 1, 2001, the First Chapter 13 Case was dismissed by this Court, pursuant to an entry of an Order, which granted a Motion to Dismiss, filed by Eppa Hunton as Curator of the Estate of Ruth B. Hicks. The Motion was also joined by United States Fidelity & Guaranty Company (USF & G). Subsequent to the dismissal of the First Chapter 13 Case, on April 16, 2001, the Debtor filed her second voluntary Petition for relief under Chapter 13. The Debtor also filed her Plan on the same day. This is the Plan now challenged by Hammer.

In the Objection, Hammer sets forth the following contentions. Hammer has a valid unsecured claim in the amount of $55,000, plus any and all applicable interest and costs, based upon a judgment entered on March 20, 2000 (Exhibit 4 of Hammer). Hammer contends that the claim is based on certain probate litigation that involved the Last Will and Testament of Ruth B. Hicks (Will), in which it was contended that the Debtor, through undue influence prevailed on Ms. Hicks to name the Debtor as the executor of the Will. Coupled with a Power of Attorney while Ms. Hicks was in the nursing home, where the Debtor was a nursing assistant, the Debtor had the Will improperly executed. Ultimately, the Will was challenged by a Bill of Complaint, filed in the state court in Virginia. The state court found the Will had been in violation of Section 64.1–49 of the Code of Virginia because the Will was improperly executed.

As a result of a determination by the Virginia court that the Will was invalid, the Debtor agreed to return to the estate items which she purchased with assets of the estate, including a diamond and a sapphire ring, valued at $17,556.94 and a 1998 Ford Ranger, valued at $16,197.54. Based on a settlement between the parties, the Debtor agreed to repay the $55,000 amount by paying an initial lump sum of $36,000, and the balance of the $19,000, at a rate of $750 a month for 24 months. It is without dispute that the initial payment was due on or about June 19, 2000. Before the Debtor made any payments, she filed the First Chapter 13 Case. It is also without dispute that the initial Schedules filed with this Court were replete with inaccuracies and omissions, as well as incorrect answers to several questions on the Statement of Financial Affairs. At the time the Debtor filed the First Chapter 13 Case, she was indebted to the estate of Ms. Hicks in the total amount of $55,000.

More importantly, in addition to scheduling only two secured creditors; Advanta Mortgage, that held the mortgage on the residence of the Debtor and Chrysler Financial Service, that held a lien on a 1997 Ford Ranger, the Debtor on Schedule E listed the only unsecured creditors as the estate of Ruth B. Hicks, in the amount of $55,000; Annette K. Lawrence, in the amount of $16,198; and Roy Barlow in the amount of $17,556. Notwithstanding, the Order dismissed the First Chapter 13 Case on the basis that the Debtor had no creditors whose debts would be subject to an adjustment.

There is nothing in this record to indicate that the First Chapter 13 Case was dismissed for bad faith filing, albeit as noted earlier, the Debtor failed to schedule assets and improperly answered certain questions. Also, in the Schedules filed in the First Chapter 13 Case, she indicated her source of income as a pension and some other items described as "other from son, $125.00." Be that as it may, it is clear that the preparation of the Statement of

Affairs, the Schedules, and the Income and Expense Statements left a lot to be desired. In fact, it was replete with omissions and misstatements, which certainly would have warranted the dismissal of the First Chapter 13 Case on the basis of bad faith. The 2016 Statement filed in the First Chapter 13 Case indicates that the Debtor paid $1,500 to the law firm of Miller & Hollander. The Statement filed in this case appears that she paid the identical to the same law firm for filing the Petition and the Schedules and attending the meeting of creditors. Additionally, under the fee agreement, the Debtor agreed to pay an additional $200 per hour for any further contested matters or adversary proceedings which might be filed in this Chapter 13 case.

In comparison to the first case, it appears from the Schedules filed in the present case that the Debtor is indebted to the Internal Revenue Service (IRS). The IRS initially filed Claim No. 4 in the amount of $23,661.83 as an unsecured priority claim, but subsequently amended the same by Claim No. 6, reducing the priority claim to an unsecured claim in the amount of $13,661.83.

The entire record of this contested matter consists of documentary evidence and no witnesses were presented in support of the Objection or in opposition of the confirmation of the Debtor's Plan. Counsel for Hammer relies primarily on the alleged conduct of the Debtor in Virginia, specifically, her conduct relating to her relationship as a nursing assistant with the deceased, Ms. Hicks. The difficulty with this approach is that while the Debtor's conduct was certainly found to be improper, the claim of Hammer is not based on her pre-filing conduct in Virginia, but on the execution of a settlement agreement, whereby she promised to repay to the estate of Ms. Hicks the total sum of $55,000.

■ Moreover, counsel for Hammer in support of their bad faith filing claim relies on another prior bankruptcy filing of the Debtor, that being in Virginia. In that case, a different creditor sought and obtained a nondischargeable debt, based upon conduct similar to the conduct against Ms. Hicks. However, in a chapter 13 case, a debtor is entitled to obtain a super-discharge, which so long as she qualifies to be a chapter 13 debtor, she would be entitled to gain benefit of the relief provided pursuant to the Bankruptcy Code.

■ In this case, it is without dispute that the claim of Hammer, although in the form of a settlement, was a result from fraud, duress, or some type of misrepresentation by the Debtor upon Ms. Hicks. The threshold question, therefore, is whether or not the transaction, which was initially fraudulently tainted, is cleansed, and the taint is removed when settled and evidenced by a settlement that calls for a payment scheme. The "settlement agreement" is nothing more than a plain indebtedness of an unsecured claim. Several courts have considered this issue. *See Munafo v. Kovacs (In re Kovacs),* 42 B.R. 1 (Bankr.D.Mass.1982); *Greenberg v. Schools,* 21 B.R. 1011 (S.D.Fla.1982), *aff'd,* 711 F.2d 152 (11th Cir.1983). In both cases, the court indicated that it must consider all circumstances surrounding the transactions, including the underlying transactions, to determine whether the debt arose out of the debtor's actual fraud, false representations, or false pretenses. "Where a borrower makes an agreement to repay a debt which arose out of his fraudulent conduct, which repayment attempt fails, any fraud in the underlying claim is not changed by the subsequent agreement." *In re Kovacs,* 42 B.R. at 3.

Clearly, the debt of the Debtor to Ms. Hicks would have been a nondischargeable debt in a Chapter 7 case. However, the inquiry does not end here.

██ The present case is not a Chapter 7 case but rather a Chapter 13 case. It is well settled, that the Bankruptcy Code is liberally construed in favor of the debtor, and the burden is on the objecting party to demonstrate by a preponderance of the evidence, facts sufficient to show that a Chapter 13 plan is filed in bad faith. Moreover, in the case of *In re Kitchens*, 702 F.2d 885 (11th Cir.1983), the court, in considering the good faith of the plan, held that there are several factors to be considered including the debtor's budget, the duration of the plan, the debtor's motivation in seeking relief, the debtor's degree of effort, the debtor's future income, and other past dealings with his creditors.

██ It is also well settled that the mere fact that a Chapter 13 debtor attempts to discharge a debt that would be nondischargeable under a Chapter 7 is not sufficient in itself to warrant a finding that a plan was not proposed in good faith; however, this fact can be relevant to a determination of good faith. *In re Doersam*, 849 F.2d 237 (6th Cir.1988); *In re Vensel*, 39 B.R. 866 (Bankr.E.D.Va.1984); *In re Caldwell*, 895 F.2d 1123 (6th Cir. 1990). These cases indicate that the motivation of a debtor to seek relief in a Chapter 13 case can be examined in finding that the case was filed in bad faith.

██ In the case at hand, it is evident that the case was not filed solely to frustrate the legitimate efforts of Hammer to enforce the collection, not of a nondischargeable debt but an obligation the Debtor voluntarily assumed by the Debtor. The Plan provides for a thirty six (36) month payment plan with distribution to unsecured creditors in the amount of twenty (20%) percent of their allowed claim. Moreover, counsel for Hammer's reliance on the admittedly improper presentation of the filing of the documents in the First Chapter 13 Case is misplaced. The problem with this proposition should be evident that while the omissions and improper answers would have been a basis to dismiss the previous Chapter 13 case, there is nothing to prevent a debtor who finds "religion" and now truthfully discloses all the previously omitted assets and furnishes correct answers, as this Debtor has done. Also, the Debtor does list sufficient creditors, who will participate in the reorganization of the Debtor. Finally, just because this is a "serial filing" is not indicative that the present case was filed in bad faith. *See In re Johnson*, 708 F.2d 865 (2d Cir.1983)(holding that there is nothing in the Code that prohibits successive filings, thus a second Chapter 13 case was not *per se*, a bad faith filing).

Based upon the foregoing, this Court is satisfied that Hammer has not met its burden for demonstrating that the Plan is filed in bad faith.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Objection to Confirmation of Chapter 13 Plan be, and the same is hereby, overruled. It is further

ORDERED, ADJUDGED AND DECREED that the Chapter 13 Plan be, and the same is hereby, confirmed.